**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Regina M. Rodriguez**

Civil Action No. 1:20-cv-01953-RMR

S.L.,[1]

      Plaintiff,

v.

COMMISSIONER, SOCIAL SECURITY ADMINISTRATION,

      Defendant.

---

## ORDER

---

This civil action arises under Title II of the Social Security Act (the "Act"), 42 U.S.C. §§ 401–33, for review of the final decision of the Commissioner of the Social Security Administration, denying Plaintiff's application for Disability Insurance Benefits ("DIB"). For the reasons stated below, the Court AFFIRMS the final decision of the Commissioner.

## I.      BACKGROUND

Plaintiff is a 62-year-old woman who alleges that she has been disabled since September 20, 2014, due to the following conditions that limit her ability to work: post-traumatic stress disorder ("PTSD") with depression and anxiety, irritable bowel syndrome and gastroesophageal reflux disease ("GERD"), arthritis, Hashimoto's thyroiditis/thyroid nodules/hypothyroidism, gastroparesis, vitamin D deficiency, connective tissue disorder

---

[1] Pursuant to D.C.COLO.LAPR 5.2(b), this order identifies the Plaintiff by initials only.

variant of Marfan syndrome, sleep apnea with hypoxemia, chronic obstructive pulmonary disease ("COPD"), and hypertension.  *See* ECF No. 12-2 at 24; ECF No. 12-3 at 4; ECF No. 12-5 at 2; ECF No. 12-6 at 5; ECF No. 12-19 at 21 (Administrative Record) [hereinafter R. at 23, 68, 149, 185, 1166].[2]  Plaintiff has completed two years of college education and has received an Associate's degree in civil design and drafting.  R. at 186.  Before September of 2014, Plaintiff had worked as a bud trimmer in the marijuana industry and, before that, as a customer service specialist for Teller County, Colorado.  R. at 53, 186.  She testified that she stopped working as a customer service representative with Teller County because she "was having increasing health issues," R. at 53, and that she stopped working as a bud trimmer because "when recreational marijuana passed, the medicinal businesses had to change their business models. . . .  [a]nd they laid me and everybody who was trimming at the grow operations off," R. at 53–54.  Plaintiff further testified that if she had not been laid off, she would have attempted to continue to work as a bud trimmer "even though it was causing [her] some physical discomfort," specifically, she "could not find a position ergonomically that didn't create pain somewhere in [her] body."  R. at 54.  Plaintiff filed her application for DIB on September 29, 2017.  R. at 23, 149; *see also* ECF No. 14 at 5, 8.

The Social Security Administration denied Plaintiff's applications administratively on February 12, 2018.  *See* R. at 23, 88–95.  On March 8, 2018, Plaintiff submitted a request for a hearing before an Administrative Law Judge ("ALJ"), R. at 23, 96–97, which

---

[2] When citing to the Administrative Record ("R."), the Court uses the page number found in the bottom right-hand corner of the page.  For all other documents, the court cites to the document and page number generated by the Electronic Court Filing ("ECF") system.

ALJ Debra L. Boudreau held on August 2, 2018, R. at 23, 45.  The ALJ heard testimony from Plaintiff and Vocational Expert Douglas B. Prutting.  R. at 23, 45–65.  Following the hearing, on October 18, 2018, the ALJ issued a decision denying Plaintiff's application for DIB.  R. at 23–39.  Plaintiff requested that the Appeals Council review the ALJ's decision, which the Appeals Council denied on February 9, 2019, rendering the ALJ's decision final.  *See* R. at 1–17; *see also, e.g.*, *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003) ("The Appeals Council denied review, making the ALJ's decision the Commissioner's final decision for purposes of review.").

Plaintiff sought judicial review of the Commissioner's final decision in this Court on March 21, 2019, in the case *[S.L.[3]] v. Saul*, 1:19-cv-00852-MSK (D. Colo. 2019).  R. at 1234–37.  However, the Commissioner voluntarily moved to remand, which the Court granted on September 3, 2019.  R. at 1239–46.  The Appeals Council remanded the case to the ALJ to (1) "further consider[] . . . the nature, severity, and limiting effects of the claimant's respiratory impairment," regarding the ALJ's prior finding that "the claimant's history of chronic obstructive pulmonary disease (COPD)" was non-severe and (2) "further consider[] . . . the claimant's statements concerning the intensity, persistence, and limiting effects of her [respiratory] symptoms." R. at 1249–50.  The ALJ held another hearing on March 10, 2020, in which Plaintiff and Vocational Expert Dennis Duffin testified.  R. at 1177–99.  The ALJ again denied benefits in a decision dated March 30, 2020.  R. at 1150–68.  The ALJ found that Plaintiff was not disabled under the Act because Plaintiff retained the residual functional capacity ("RFC") to perform light work,

---

[3] *See supra* note 1.

with certain limitations, and that Plaintiff could perform her past relevant work as a bud trimmer, classified as "farm worker I," as she previously performed it, or alternatively, there were jobs that exist in significant numbers in the national economy that Plaintiff could perform.  R. at 1156, 1166–67.  The ALJ concluded that Plaintiff "was not under a disability, as defined in the Social Security Act, at any time from September 20, 2014, the alleged onset date, through December 31, 2019, the date last insured."  R. at 1167.  The Appeals Council did not assume jurisdiction.  *See* 20 C.F.R. § 404.984.

Plaintiff again sought judicial review of the Commissioner's final decision in this Court on July 3, 2020, invoking this Court's jurisdiction to review the decision under 42 U.S.C. §§ 405(g), 1383(c)(3).  *See* ECF No. 1 ¶ 1; *see also* ECF No. 14 at 5.  This matter was reassigned to the undersigned on July 6, 2021.  ECF No. 22.

## II.    LEGAL STANDARDS

A United States citizen or national is eligible for DIB benefits under the Act if she "is insured for disability insurance benefits"; "has not attained retirement age"; "has filed application for disability insurance benefits"; and "is under a disability," as defined in the Act.  42 U.S.C. § 423(a)(1), (d).  For purposes of DIB, a claimant must prove she was disabled prior to the date last insured.  *Flaherty v. Astrue*, 515 F.3d 1067, 1069 (10th Cir. 2007) (citing *Henrie v. United States Dep't Health & Hum. Servs.*, 13 F.3d 359, 360 (10th Cir. 1993)).

An individual is determined to be under a "disability," as defined in the Act, if her "physical or mental impairment or impairments are of such severity that [s]he is not only unable to do [her] previous work but cannot, considering [her] age, education, and work

4

experience, engage in any other kind of substantial gainful work which exists in the national economy[.]"  42 U.S.C. § 423(d)(2)(A).

> In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility . . . , the Commissioner of Social Security shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity.  If the Commissioner of Social Security does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

*Id*. § 423(d)(2)(B).  Further, there is a "duration requirement" for the disabling impairment, that is, it must "ha[ve] lasted or can be expected to last for a continuous period of not less than twelve months."  *Id*. § 423(d)(1)(A); *Barnhart v. Walton*, 535 U.S. 212, 214–15 (2002) ("[T]he 'inability' (to engage in any substantial gainful activity) must last, or must be expected to last, for *at least 12 months*.") (emphasis in original); *see also* 20 C.F.R. § 404.1509.

The Commissioner "has established a five-step sequential evaluation process for determining whether a claimant is disabled" under the Act.  *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. § 404.1520(a)(4).   The process involves the following five inquiries:

1. Whether the claimant is "doing substantial gainful activity," 20 C.F.R. § 404.1520(a)(4)(i);

2. Whether the claimant has a "severe medically determinable physical or mental impairment that meets the duration requirement" or a "combination of impairments that is severe and meets the duration requirement," *id*. § 404.1520(a)(4)(ii);

3. Whether the claimant has "an impairment(s) that meets or equals one of [the] listings in" Title 20, Chapter III, Part 404, Subpart P, Appendix 1 of the Code of Federal Regulations, and that "meets the duration requirement," *id.* § 404.1520(a)(4)(iii);

4. Whether the claimant has the residual functional capacity ("RFC" or "residual functional capacity") to "do [his] past relevant work," *id.* § 404.1520(a)(4)(iv); and

5. Whether, considering the claimant's RFC and his "age, education, and work experience," the claimant "can make an adjustment to other work," *id.* § 404.1520(a)(4)(v), that "exists in significant numbers in the national economy," *id.* § 404.1560(c)(1)–(2).

*See also, e.g.*, *Williams v. Bowen*, 844 F.2d 748, 750–52 (10th Cir. 1988) (describing the five steps). "The claimant bears the burden of proof through step four of the analysis[,]" while "[a]t step five, the burden shifts to the [Commissioner] to show that a claimant can perform work that exists in the national economy." *Neilson v. Sullivan*, 992 F.2d 1118, 1120 (10th Cir. 1993). "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Williams*, 844 F.2d at 750).

"Judicial review of the [Commissioner's] decision is limited to a determination whether her factual findings are supported by substantial evidence and whether she applied the correct legal standards." *Nguyen v. Shalala*, 43 F.3d 1400, 1402 (10th Cir. 1994). "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Flaherty*, 515 F.3d at 1070 (quoting *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005)). "Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion." *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir.

1992).  "[I]n making this determination, [the Court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's."  *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

## III.    ANALYSIS

On appeal, Plaintiff raises the following issues.  First, Plaintiff argues that the ALJ's failure to consider a decision by the Department of Veterans Affairs ("VA") that, under its regulations, Plaintiff was 100% disabled and entitled to individual unemployability benefits, effective October 20, 2016, was harmful error and the result of a regulation that is not entitled to *Chevron* deference.  *See* ECF No. 14 at 36–39 (citing *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc. et al.*, 467 U.S. 837 (1984)); ECF No. 18 at 4–9; R. at 166–72.  Plaintiff argues that if the ALJ had considered this decision from another governmental agency, "it would likely have led to a finding of disability" at step three, "given that it indicates that one of the mental health listings was likely met" and "would likely have led to a finding of disability at Steps Four and Five given that it indicates that [Plaintiff] is unable to sustain employment]."  ECF No. 14 at 39.

Second, Plaintiff argues that, in making her residual functional capacity findings, the ALJ's assessment of the medical source opinions contravenes controlling case law regarding the "treating physician rule."  *Id.* at 40–42.  Plaintiff further argues that the ALJ's assessment of the various medical source opinions is not supported by substantial evidence.  *Id.* at 40, 42–50.  Third, also pertinent to the ALJ's residual functional capacity findings, Plaintiff argues that the ALJ's evaluation of the consistency of Plaintiff's statements with the record is not supported by substantial evidence.  *Id.* at 51–53.

Fourth, Plaintiff argues that the ALJ committed harmful error at step four by finding that Plaintiff was capable of performing her "past relevant work" in the Colorado marijuana industry.  *Id.* at 35.  Plaintiff argues that marijuana is a controlled substance under federal law and the Commissioner's policy is that "illegal" work does not constitute "relevant" work for purposes of determining a claimant's "past relevant work."  *Id.* at 35 (citing POMS DI 25005.015(E); SSR 82-61, 1982 WL 31387 (Jan. 1, 1982)).

Fifth and finally, Plaintiff argues that, at step five, the ALJ failed to reconcile a discrepancy between her residual functional capacity findings and the descriptions in the *Dictionary of Occupational Titles* corresponding with two of the three types of jobs existing in significant numbers in the national economy that the vocational expert testified Plaintiff could perform.  *Id.* at 50–51.  Regarding the third type of job, Plaintiff argues that the numbers of that type of job that exist nationally, according to the vocational expert, do not constitute "significant numbers in the national economy" for purposes of fulfilling the Commissioner's burden at step five.  *Id.* at 50–51.  For the reasons stated below, the Court AFFIRMS the ALJ's decision.

## A.    The VA Decision

Plaintiff served in active duty in the U.S. Air Force until 1982, when she began to work at the U.S. Air Force Academy for a few years.  R at 153–55; *see* ECF No. 14 at 8. She worked in other jobs until 1999, when she began working for Teller County, Colorado. R. at 155–59, 206; *see* ECF No. 14 at 8.  She continued to work for the county until she began working as a bud trimmer in Colorado's marijuana industry about three years before her alleged disability onset date of September 20, 2014.  R. at 155–59, 206; *see*

ECF No. 14 at 8.  On January 30, 2017, the VA issued a decision in which it granted Plaintiff individual unemployability benefits "because [she is] unable to secure or follow a substantially gainful occupation as a result of service-connected disabilities."  R. at 167. The VA concluded that Plaintiff was 100% disabled, effective October 20, 2016, due to "post traumatic stress disorder with alcohol use disorder and somatic symptom disorder with predominant pain (claimed also with anxiety and suicidal ideation)."  R. at 167–69; *see* 38 C.F.R. § 4.16(b) ("It is the established policy of the Department of Veterans Affairs that all veterans who are unable to secure and follow a substantially gainful occupation by reason of service-connected disabilities shall be rated totally disabled.").

Before March 27, 2017, the Social Security Administration regulations provided that:

> A decision by any nongovernmental agency or any other governmental agency about whether you are disabled or blind is based on its rules and is not our decision about whether you are disabled or blind.  We must make a disability or blindness determination based on social security law. Therefore, a determination made by another agency that you are disabled or blind is not binding on us.

20 C.F.R. § 404.1504 (effective until March 27, 2017).  Although this regulation provided that another governmental agency's decision is not binding on the Commissioner, Tenth Circuit case law required the Commissioner to consider the findings of other government agencies in reaching a decision about whether a claimant is disabled under the Social Security Act.  *See Baca v. Dep't of Health & Human Servs.*, 5 F.3d 476, 480 (10th Cir. 1993) (quoting *Fowler v. Califano*, 596 F.2d 600, 603 (3d Cir. 1979)) ("[T]he ALJ should have considered the VA disability rating in making his decision.  'Although findings by other government agencies are not binding on the Secretary, they are entitled to weight

and must be considered.'"); *see also Grogan*, 399 F.3d at 1262 ("Although another agency's determination of disability is not binding on the Social Security Administration, . . . it is evidence that the ALJ must consider and explain why he did not find it persuasive."). However, effective March 27, 2017, the Commissioner updated this regulation, which now provides that:

> Other governmental agencies and nongovernmental entities—such as the Department of Veterans Affairs, the Department of Defense, the Department of Labor, the Office of Personnel Management, State agencies, and private insurers—make disability, blindness, employability, Medicaid, workers' compensation, and other benefits decisions for their own programs using their own rules. Because a decision by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits is based on its rules, it is not binding on us and is not our decision about whether you are disabled or blind under our rules. *Therefore, in claims filed . . . on or after March 27, 2017, we will not provide any analysis in our determination or decision about a decision made by any other governmental agency or a nongovernmental entity about whether you are disabled, blind, employable, or entitled to any benefits.* However, *we will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision that we receive as evidence in your claim in accordance with § 404.1513(a)(1) through (4).*

20 C.F.R. § 404.1504 (effective March 27, 2017) (emphasis added).

First, Plaintiff argues that the updated regulation is "contrary to both the enabling statute and controlling case law" and that it is "not entitled to *Chevron* or *Auer* deference." ECF No. 14 at 37 (citing *Chevron*, 467 U.S. 837; *Auer v. Robbins*, 519 U.S. 452 (1997)). Second, Plaintiff argues that "even if [the new regulation] was validly promulgated," the ALJ failed to comply with it. *Id.* at 38. The Court addresses each argument below.

### 1.    Whether the New Regulation is Entitled to Deference

Another court in the Tenth Circuit, the Western District of Oklahoma, has considered whether the new regulation governing the Commissioner's treatment of other agency decisions is entitled to deference.  *See Geist v. Kijakazi*, No. CIV-20-680-AMG, 2022 WL 615028, at *3–6 (W.D. Okla. Mar. 2, 2022) (Green, Mag. J., proceeding with consent jurisdiction).   In that case, the court "g[a]ve[] the regulations deference and f[ou]nd they were properly applied by the ALJ."  *Id.* at *5; *see also, e.g.*, *Rogers v. Commissioner*, No. 3:20-cv-00206-RJC-DSC, 2022 WL 135310, at *4 (W.D.N.C. Jan. 13, 2022) (Conrad, J.) ("Defendant was within its right to revise its regulations on this matter."); *Taylor v. Kijakazi*, No. 4:20-cv-1545-AKK, 2021 WL 4820653, at *5 (N.D. Ala. Oct. 15, 2021) (Kallon, J.) (citing *Noble v. Commissioner*, 963 F.3d 1317, 1324 (11th Cir. 2020)) ("The Eleventh Circuit has referenced the amended regulations and noted that an ALJ no longer must analyze a decision by another agency about whether a claimant is disabled but still must consider the evidence underlying that decision."); *Diaz-Ortiz v. Commissioner*, No. 2:20-cv-134-MRM, 2021 WL 4205850, at *12 (M.D. Fla. Sept. 16, 2021) (McCoy, Mag. J., proceeding with consent jurisdiction) (citing *Noble*, 963 F.3d at 1324) ("[I]n light of *Noble* and similar treatment by other courts, this Court applies the revised regulations to Plaintiff's claim."); *Rhine v. Saul*, No. 4:19-cv-1781, 2021 WL 254066, at *8 (M.D. Pa. Jan. 26, 2021) (Arbuckle, Mag. J., proceeding with consent jurisdiction) ("[T]he exceptionally broad rulemaking authority conferred by Congress leaves ample room for the Commissioner to decide that such decisions [from another governmental agency] are inherently neither valuable nor persuasive, and to not require

analysis of such decisions.").  For similar reasons, this Court agrees that the regulation at issue is entitled to *Chevron* deference.[4]

Regulations are given "controlling weight unless they are arbitrary, capricious, or manifestly contrary to statute."  *Chevron*, 467 U.S. at 844.  Courts and agencies "must give effect to the unambiguously expressed intent of Congress" when "Congress has directly spoken to the precise question at issue." *Id.* at 842–43.  Otherwise, courts must determine whether the regulation is "based on a permissible construction of the statute." *Id.* at 843.  Plaintiff argues that the new regulation, 20 C.F.R. § 1504, is contrary to the enabling statute and controlling case law.[5]  ECF No. 14 at 37.  Plaintiff points out that the enabling statute, 42 U.S.C. § 405, directs the Commissioner "to make findings of fact, and decisions as to the rights of any individual applying for a payment" and that:

> Any such decision by the Commissioner of Social Security which involves a determination of disability and which is in whole or in part unfavorable to such individual shall contain a statement of the case, in understandable language, setting forth a discussion of the evidence, and stating the Commissioner's determination and the reason or reasons upon which it is based.

42 U.S.C. § 405(b)(1).  According to Plaintiff, 20 C.F.R. § 404.1504 "is not a permissible construction of" the enabling statute, 42 U.S.C. § 405(b)(1), because the regulation

---

[4] As for *Auer* deference, Plaintiff challenges the Commissioner's interpretation of the enabling statute, rather than the Commissioner's interpretation of his own regulation.  *See* ECF No. 14 at 36–38.  Therefore, *Auer* deference does not apply.  *See Federal Express Corp. v. Holowecki*, 552 U.S. 389, 397 (2008) ("Just as we defer to an agency's reasonable interpretation of the statute when it issues regulations in the first instance, see *Chevron, supra*, the agency is entitled to further deference when it adopts a reasonable interpretation of regulations it has put in force.  See *Auer v. Robbins*, 519 U.S. 452 . . . (1997)."); *see also Decker v. Northwest Env't Def. Ctr.*, 568 U.S. 597, 617 (2013) (Scalia, concurring) ("In practice, *Auer* deference is *Chevron* deference applied to regulations rather than statutes.").

[5] Plaintiff does not argue that the new regulation is arbitrary and capricious.

"specifically allows the Commissioner to ignore certain evidence, regardless of how probative it might be."  ECF No. 14 at 37.

However, as Defendant points out, Congress also empowered the Commissioner to "adopt reasonable and proper rules and regulations to regulate and provide for the nature and extent of the proofs and evidence and the method of taking and furnishing the same in order to establish the right to benefits."  *See* ECF No. 17 at 8 (quoting 42 U.S.C. § 405(a)).  The Commissioner also has "full power and authority to make rules and regulations and to establish procedures, not inconsistent with the provisions of this subchapter, which are necessary or appropriate to carry out such provisions."  42 U.S.C. § 405(a).  Therefore, providing in this new regulation that the ALJ was not required to analyze another agency's decision and that the ALJ need only consider evidence—as defined in 20 C.F.R. § 404.1513(a)(1) through (4)—underlying another agency's decision was within the Commissioner's authority under the enabling statute and was "based on a permissible construction of the statute."  *See Chevron*, 467 U.S. at 843; *see also Heckler v. Campbell*, 461 U.S. 458, 466 (1983) (quoting *Schweiker v. Gray Panthers*, 453 U.S. 34, 43 (1981)) ("Congress has 'conferred on the Secretary exceptionally broad authority to prescribe standards for applying certain sections of the [Social Security] Act.'") (alteration in original).

As for Plaintiff's argument that Tenth Circuit precedent predating the regulation's amendment should control, *see* ECF No. 14 at 37, that argument is equally without merit. The Supreme Court has held that "[a] court's prior judicial construction of a statute trumps an agency construction otherwise entitled to *Chevron* deference only if the prior court

decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion." *National Cable & Telecomms. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982 (2005). The prior Tenth Circuit caselaw that Plaintiff argues should control here made no such determination that there was "no room for agency discretion" in the interpretation of the Social Security Act on this issue. *See id.*; *Grogan*, 399 F.3d at 1262–63; *Baca*, 5 F.3d at 480; ECF No. 14 at 36. Therefore, under *Brand X*, the new regulation, rather than prior Tenth Circuit precedent, controls whether the ALJ must discuss another agency's decision in her decision setting forth whether Plaintiff is entitled to disability benefits.

## 2.    Whether the ALJ Followed the New Regulation

Plaintiff argues that, even if 20 C.F.R. § 404.1504 is entitled to deference, the ALJ failed to comply with it "because she utterly failed to consider the underlying evidence that led to the VA's decision." ECF No. 14 at 38. The amended regulation provides that, although the Commissioner "will not provide any analysis in [the ALJ's] determination or decision about a decision made by any other governmental agency," the Commissioner "will consider all of the supporting evidence underlying the other governmental agency or nongovernmental entity's decision *that we receive as evidence* in your claim *in accordance with § 404.1513(a)(1) through (4)*." 20 C.F.R. § 404.1504 (emphasis added). Here, Plaintiff "submitted or informed the [ALJ] about all written evidence at least five business days before the date of the claimant's scheduled hearing," R. at 1150 (citing 20 C.F.R. § 404.935(a)), and the ALJ stated that she gave "careful consideration of all of the evidence" and "the entire record," R. at 1151–52, 1156. "Such statement is generally

sufficient when the record provides no reason to question its validity." *Cox v. Apfel*, No. 99-2296-JWL, 2000 WL 1472729, at *8 (D. Kan. Feb. 24, 2000) (citing *Hamilton v. Sec'y Health & Hum. Servs.*, 961 F.2d 1495, 1498–99 (10th Cir. 1992)); *see also Hackett v. Barnhart*, 395 F.3d 1168, 1172–73 (10th Cir. 2005) ("[O]ur general practice . . . is to take a lower tribunal at its word when it declares that it has considered a matter.").

Further, under 20 C.F.R. § 404.1513(a)(1) through (4), the categories of evidence underlying another governmental agency's decision that the Commissioner will consider are:

(1) objective medical evidence, defined as "medical signs, laboratory findings, or both," 20 C.F.R. § 1513(a)(1);

(2) medical opinion, defined as "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions . . . ," *id.* § 1513(a)(2);

(3) other medical evidence, defined as "evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of your impairments, your medical history, clinical findings, diagnosis, treatment prescribed with responses, or prognosis," *id.* § 1513(a)(3); and

(4) evidence from nonmedical sources, defined as "any information or statement(s) from a nonmedical source (including [the claimant]) about any issue in [the] claim," *id.* § 1513(a)(4).

Here, the ALJ specifically considered and discussed all of the categories of evidence listed above that she received. R. at 1158 (discussing objective medical evidence, such as x-rays and magnetic resonance imaging (MRI) results), 1162–66 (discussing medical opinion evidence), 1159 (discussing other medical evidence such as clinical findings), 1154–58 (discussing evidence in the form of testimony from Plaintiff, a nonmedical source). Therefore, the ALJ complied with the updated regulation's obligation to "consider

all of the supporting evidence" that she "receive[d] as evidence in [the] claim in accordance with § 404.1513(a)(1) through (4)." *See* 20 C.F.R. § 404.1504.

Plaintiff argues that the ALJ should have considered the factors listed within the VA's decision, itself, on which the VA based its findings. *See* ECF No. 14 at 38 (citing R. at 169, 171). The factors and reasoning discussed in the VA's decision is part of the decision, itself. It does not constitute "supporting evidence underlying the other governmental agency['s] decision" that falls within one of the categories listed above and was "receive[d] as evidence" in Plaintiff's claim "in accordance with § 404.1513(a)(1) through (4)." *See* 20 C.F.R. §§ 404.1504, 404.1513(a)(1)–(4). Therefore, the ALJ was not required to discuss the factors that the VA discussed in reaching its decision under its regulations.[6]

## B.    The ALJ's Residual Functional Capacity Assessment

The ALJ found that Plaintiff has "the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except she can occasionally lift and/or carry about

---

[6] Furthermore, contrary to Plaintiff's arguments, the ALJ did discuss substantially similar factors in her decision as those underlying the VA's decision. *Compare* R. at 1157 (discussing Plaintiff's "short temper" and that "she became angry frequently"), *with* R. at 169, 171 (VA decision discussing "[u]nprovoked irritability with periods of violence"); *compare also* R. at 1161 (discussing Plaintiff's "history of posttraumatic stress disorder, major depressive disorder (MDD)" and a time when "her depress was worse"), *with* R. at 169, 171 (VA decision discussing suspiciousness, depressed mood); *compare also* R. at 1158 (discussing Plaintiff's "hard time handling stress"), *with* R. at 169, 171 (VA decision discussing "[d]ifficulty in adapting to stressful circumstances"); *compare also* R. at 1158 (discussing that Plaintiff "has panic attacks and flashbacks"), *with* R. at 169, 171 (VA decision discussing panic attacks); *compare also* R. at 1161–62 (discussing Plaintiff's anxiety disorder and that "[s]he was an obsessive worrier"), *with* R. at 169, 171 (VA decision discussing anxiety); *compare also* R. at 1157–58 (discussing that "[o]ther people have told [Plaintiff] that she does not have normal responses to every day interactions" and that "[a]t her last job, she was reprimanded several times for her tone of voice"), *with* R. at 169, 171 (VA decision discussing "[o]ccupational and social impairment, with deficiencies in most areas, such as work, school, family relations, judgment, thinking, or mood" and "[d]ifficulty in establishing and maintaining effective work and social relationships").

twenty pounds and frequently ten pounds."  R. at 1156.  The ALJ further found that Plaintiff:

- can stand and/or walk for about six hours out of an eight-hour workday;

- can sit for about six hours out of an eight-hour workday;

- can occasionally climb, balance, stoop, kneel, crouch, and crawl;

- must avoid more than occasional work in extreme heat or cold;

- must avoid more than occasional work in humidity or more than occasional work in an environment with concentrated pulmonary irritants, such as fumes, odors, dusts, and gasses;

- can understand and remember tasks involving some skills, but not more detailed work that required accuracy and attention to detail that can be learned on the job for average job performance in about a six-month period;

- can sustain concentration, persistence, and pace for these moderately complex instructions over a typical workday or workweek;

- can tolerate occasional, superficial interaction with the general public;

- can tolerate occasional interaction with coworkers and supervisors;

- can make work decisions;

- can tolerate task changes;

- can travel and recognize and avoid work hazards.

R. at 1156.  As stated above, Plaintiff argues that, in reaching this RFC finding, the ALJ erred in failing to follow the "treating physician rule" in assessing the medical opinion evidence; that the ALJ's assessment of the medical opinions was not supported by substantial evidence; and that the ALJ's assessment of the consistency of Plaintiff's statements with the rest of the record was not supported by substantial evidence.  The Court addresses each argument below, in turn.

### 1.    Medical Opinion Evidence

#### a.    Treating Physician Rule

Plaintiff challenges the regulation regarding "[h]ow [the Social Security Commissioner] consider[s] and articulate[s] medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017." *See* 20 C.F.R. § 404.1520c; ECF No. 14 at 40–42; *see also* ECF No. 18 at 9–12. As Plaintiff points out, for claims filed before March 27, 2017, the Commissioner "give[s] more weight to medical opinions from [claimants'] treating sources." 20 C.F.R. § 404.1527(c)(2). This prior regulation aligned with a rule from prior case law, known as the "treating physician rule." *See, e.g.*, *Broadbent v. Harris*, 698 F.2d 407, 412 (10th Cir. 1983) (citing *Allen v. Califano*, 613 F.2d 139 (6th Cir. 1980)) (noting that one of the "major tenets of law . . . on this issue" include that, "[i]n determining the question of substantiality of evidence, the reports of physicians who have treated a patient over a period of time or who are consulted for purposes of treatment are given greater weight than are reports of physicians employed and paid by the government for the purpose of defending against a disability claim"), *cited in* ECF No. 14 at 41; *see also* Standards for Consultative Examinations and Existing Medical Evidence, 56 Fed. Reg. 36,932, 36,961 (Aug. 1, 1991) (to be codified at 20 C.F.R. pts. 404 and 416) (putting in place the prior regulation regarding the treating physician rule).

Here, Plaintiff filed her claim on September 29, 2017. R. at 23, 149. Therefore, the new regulation, 20 C.F.R. § 404.1520c, applies. *See* 20 C.F.R. § 404.1520c ("For claims filed . . . on or after March 27, 2017, the rules in this section apply. For claims filed before March 27, 2017, the rules in [§ 404.1527 and § 416.927] apply."); *see also id.*

§ 404.1527; Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5869–70 (Jan. 18, 2017); ECF No. 17 at 14–16.  Under the new regulation, the Commissioner "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) . . . , including those from [a claimant's] medical sources."  20 C.F.R. § 404.1520c(a).

Plaintiff challenges the validity of this new regulation, arguing that "the Commissioner cannot, by regulatory fiat, undo established Court precedent, which stands for the commonsense principle that the opinions of medical sources who have actually examined or treated the claimant are entitled to more weight than those who have not." ECF No. 14 at 41 (citing *Broadbent*, 698 F.2d at 412).  On the other hand, Defendant argues that "the Commissioner validly exercised his broad authority in eliminating the rule" and that the "2017 regulatory revisions supersede prior agency policy and abrogate existing judicial precedent."  ECF No. 17 at 12–13.

As noted above, "[o]nly a judicial precedent holding that the statute unambiguously forecloses the agency's interpretation, and therefore contains no gap for the agency to fill, displaces a conflicting agency construction."  *Brand X*, 545 U.S. at 982–83.  The Tenth

Circuit has cited the new regulation, 20 C.F.R. § 404.1520c, several times with approval.[7]
*See, e.g.*, *Zhu v. Commissioner*, No. 20-3180, 2021 WL 2794533, at *5 (10th Cir. July 6, 2021) ("Under the revised regulations applicable here, the ALJ does 'not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[,] . . . including those from [the claimant's] medical sources.'") (footnote omitted) (alterations in original); *Tuttle v. Commissioner*, 853 F. App'x 246, 249 n.3 (10th Cir. 2021) ("Different guidelines apply to the evaluation of claims filed on or after [March 27, 2017]."); *Panas ex rel. M.E.M. v. Commissioner*, 775 F. App'x 430, 439 n.2 (10th Cir. 2019) (same); *Bills v. Commissioner*, 748 F. App'x 835, 838 n.1 (10th Cir. 2018) (same). Therefore, there is no controlling judicial precedent holding that the new regulation is unambiguously foreclosed by the Social Security Act and thus requiring this Court to refrain from applying the new regulation in this case. Accordingly, here, the ALJ appropriately did "not defer or give any

---

[7] So has the District of Colorado. *See, e.g.*, *K.K. v. Kijakazi*, No. 1:20-cv-02040-DDD, 2022 WL 819540, at *4 (D. Colo. Mar. 18, 2022) (Domenico, J.) ("The applicable regulations include a new section . . . . Among other changes, the agency 'will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's own] medical sources."); *Robinson v. Kijakazi*, No. 1:20-cv-003404-RBJ, 2022 WL 43027, at *3 (D. Colo. Jan. 5, 2022) (Jackson, J.) (applying 20 C.F.R. § 404.1520c to a claim for benefits filed on March 28, 2018); *L.J. v. Kijakazi*, No. 21-cv-01066-REB, 2021 WL 6125398, at *4 (D. Colo. Dec. 28, 2021) (Blackburn, J.) ("Plaintiff acknowledges the regulations which once required the ALJ to weight medical source opinions and to give controlling weight to treating source opinions have been rescinded and do not apply to claims, like hers, filed after March 27, 2017. . . . No longer is there a hierarchy of opinions based on a source's treating relationship with the plaintiff; instead, all medical opinions are evaluated for their ultimate persuasiveness."); *Miles v. Saul*, No. 20-cv-1456-WJM, 2021 WL 3076846, at *2 (D. Colo. July 21, 2021) (Martínez, J.) ("[F]or claims filed on or after March 27, 2017, the Government issued new regulations that revise the procedures and standards for evaluating medical opinions and prior administrative medical findings, abrogating the treating physician rule."); *Davison v. Commissioner*, No. 20-cv-01539-MSK, 2021 WL 2885941, at *5 (D. Colo. July 9, 2021) (Krieger, J.) ("[T]he regulations include a new section explaining the process to be used in considering medical opinions and prior administrative medical findings for claims filed on or after March 27, 2017. This provision does away with the prior treating source rule."); *Larue v. Saul*, No. 20-cv-00391-PAB, 2021 WL 1207448, at *7 n.6 (D. Colo. Mar. 31, 2021) (Brimmer, C.J.) ("In 2017, the rules were changed to no longer 'defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s).'").

specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [Plaintiff's] medical sources." *See* 20 C.F.R. § 404.1520c(a); R. at 1156–57, 1162 ("The undersigned . . . considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 C.F.R. § 404.1520c. . . . [T]he undersigned cannot defer or give any specific evidentiary weight, including controlling weight, to any prior administrative medical finding(s) or medical opinion(s), including those from medical sources.").

### b. The ALJ's Assessment of the Medical Opinions and Prior Administrative Findings in the Record

After arguing that the treating physician rule, rather than the updated regulation, still applies to her claim, Plaintiff proceeds to challenge the ALJ's assessment of each of the various medical opinions and prior administrative findings in the record under the prior, superseded standard. *See* ECF No. 14 at 42–50. Plaintiff argues that "the ALJ failed to give 'good' reasons for the weight given to those opinions, and in the case of Dr. [Jeff] Snyder's she failed to cite 'specific and legitimate' reasons as required by *Knight ex rel. P.K. v. Colvin*, 756 F.3d 1171, 1176–77 (10th Cir. 2014), *Drapeau v. Massanari*, 255 F.3d 1121 [sic[8]] (10th Cir. 2011), and *Langley v. Barnhart*, 373 F.3d 1116, 1119 (10th Cir. 2004)." *Id.* at 42.

As stated above, this standard was superseded by the regulations that took effect for claims filed on or after March 27, 2017 and so does not apply to Plaintiff's claim, which was filed on September 29, 2017. *See* 20 C.F.R. § 404.1520c; R. at 23, 149. Therefore,

---

[8] *See Drapeau v. Massanari*, 255 F.3d 1211 (10th Cir. 2001).

the Court declines to re-evaluate the medical opinion evidence under the outdated standard that Plaintiff promotes. Plaintiff argues in her Reply brief that "[e]ven if the Commissioner's 2017 regulation properly abrogated four decades of Court precedent, the ALJ failed to follow that regulation when she failed to explain how she considered the supportability and consistency factors as required by that 2017 regulation." ECF No. 18 at 12. However, the Court need not consider arguments raised for the first time in a Reply brief.[9] *Sadeghi v. I.N.S.*, 40 F.3d 1139, 1143 (10th Cir. 1994) ("[W]e generally do not consider issues raised for the first time in a reply brief."); *Denver Bible Church v. Azar*, 494 F. Supp. 3d 816, 838 n.23, 840 n.25 (D. Colo. 2020) (Domenico, J.).

## 2. Consistency of Plaintiff's Statements with the Record

In concluding that Plaintiff had the residual functional capacity stated above, the ALJ "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence, based on the requirements of 20 CFR 404.1529 and SSR 16-3p." R. at 1156. Under 20 C.F.R. § 404.1529, the ALJ "will consider all of [the claimant's] statements about [her] symptoms, such as pain." 20 C.F.R. § 404.1529(a).

---

[9] In raising this argument in her Reply brief, Plaintiff also states that her "Opening Brief, p. 42-50, explains these harmful errors in more detail." ECF No. 18 at 12. However, the Court also declines to entertain any post-facto attempt to reframe Plaintiff's original arguments in her Opening Brief as arguments applying the standards under the new and applicable regulation, 20 C.F.R. § 404.1520c(c), when the Opening Brief did not do so, in the first place.

>However, statements about [the claimant's] pain or other symptoms will not alone establish that [the claimant] is disabled.  There must be objective medical evidence from an acceptable medical source that shows [the claimant] ha[s] a medical impairment(s) which could reasonably be expected to produce the pain or other symptoms alleged and that, when considered with all of the other evidence (including statements about the intensity and persistence of [the claimant's] pain or other symptoms which may reasonably be accepted as consistent with the medical signs and laboratory findings), would lead to a conclusion that [the claimant is] disabled.

*Id.*  Similarly, Social Security Ruling 16-3p instructs the Social Security Administration's adjudicators that they "must consider whether an individual's statements about the intensity, persistence, and limiting effects of his or her symptoms are consistent with the medical signs and laboratory findings of record."  SSR 16-3p, 2017 WL 5180304, at *5 (Oct. 25, 2017).  Here, the ALJ concluded, "[a]fter careful consideration of the evidence," that Plaintiff's "medically determinable impairments could reasonably be expected to cause some symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record."  R. at 1158.

Plaintiff argues that the ALJ made "numerous errors in the evaluation of [Plaintiff's] consistency."  ECF No. 14 at 51; *see also* ECF No. 18 at 13 ("[T]he ALJ's assessment of [Plaintiff's] 'consistency' is replete with factual errors and out-of-context statements."). First, Plaintiff takes issue with the fact that "the ALJ cites the fact that [Plaintiff] played badminton," noting that "[t]his occurred on one occasion only and she had to increase her Percocet use afterward."  ECF No. 14 at 51 (citing R. at 950).  However, the ALJ did, in fact, take into consideration the fact that Plaintiff "had to take Percocet that day" but that

subsequent treatment notes state that she rated her pain a 4 out of 10.  R. at 1159 (citing R. at 950, 953).

Second, Plaintiff contests the ALJ's observation that Plaintiff's treatment for her mental impairments was "relatively conservative, consisting largely of outpatient therapy and routine intervention."  R. at 1161.  Plaintiff states, without support, that Plaintiff's "weekly, hour-long psychotherapy sessions indicate that [Plaintiff's] psychotherapy was more intensive than most."  ECF No. 14 at 51.  Plaintiff also argues that the ALJ's statement "that [Plaintiff's] mental health treatment was primarily therapy . . . is only partially correct" and "that treatment also included the medications Zoloft and Cymbalta." *Id.* (citing R. at 494–98, 562–63, 978, 1454–55).  However, Plaintiff's characterization that the ALJ failed to consider that Plaintiff was taking antidepressants, as well as attending psychotherapy, is incorrect, as the ALJ acknowledged that in May of 2018, Plaintiff "was looking at the possibility of going *back* on antidepressants."  R. at 1161 (emphasis added).  The ALJ also correctly noted that in July of 2017, Plaintiff declined to use prescription medication to treat her depression and anxiety and instead used herbal supplements.  R. at 1161 (citing R. at 464).  Plaintiff argues that "[c]ontrary to the ALJ's implication, [Plaintiff] did not stop [her anti-depressants] because they were not needed; she stopped them because of their side effects."  ECF No. 14 at 52.  However, the ALJ was entitled to consider the fact that Plaintiff declined to use prescription medication.  *See* 20 C.F.R. § 404.1529(c)(3)(iv); *see also, e.g.*, *Wilson v. Astrue*, 602 F.3d 1136, 1146 (10th Cir. 2010) (observing that the ALJ "noted that while Ms. Wilson did take prescription

medications, she did not take prescription strength pain relief medication despite her claims of disabling pain").

In general, the ALJ found that Plaintiff's "mental status examination findings showed generally normal findings" and that "[o]n the majority of the claimant's routine examinations between September 2014 and March 2018, the claimant was alert and cooperative, she had a normal mood and affect, and she had a normal attention span and concentration."  R. at 1161 (citing R. at 439–577).  Moreover, Plaintiff testified that, having "read some self-help books, . . . most days [she's] okay" when it comes to her symptoms from depression.  R. at 1191.

Third and finally, Plaintiff argues that the ALJ's finding that Plaintiff's COPD was not as limiting as Plaintiff alleged was based on misstatements of fact.  ECF No. 14 at 52. In particular, Plaintiff appears to argue that the ALJ erroneously found that Plaintiff "did not stop smoking."  *Id.*   However, the ALJ did not state that Plaintiff never stopped smoking; only that she "continued smoking throughout her treatment records despite medical advice" while having "normal lung function tests."  R. at 1160.  The ALJ further took into consideration the fact that "[a]t her supplemental hearing, the claimant allege[d] ongoing breathing problems" and that she "was using supplemental oxygen."  R. at 1157. According to Plaintiff, the vocational expert testified that only sedentary work would be possible for someone who needed to use oxygen full-time.   ECF No. 14 at 52–53. However, that is a misstatement of the testimony of the vocational expert, which was that "[t]heoretically, those jobs [data entry clerk—a sedentary job—and administrative clerk and general clerk—light jobs] could be performed . . . . with oxygen. . . .   It just gets really

heavy over an eight-hour day."  R. at 1197.  Although the vocational expert testified that

for sedentary jobs, it would be easier to simply lay the oxygen on the floor, the vocational

expert did not testify that only sedentary jobs were possible for someone who needed to

use oxygen all day.  R. at 1997.

Overall, the ALJ's "determination or decision . . . contain[ed] specific reasons for

the weight given to the individual's symptoms" and was "consistent with and supported

by the evidence."  *See* SSR 16-3P, 2017 WL 5180304, at *10.  In general, the ALJ is

entitled to weigh the record evidence against the statements of the Plaintiff, and it is not

the Court's role to "reweigh the evidence or substitute [its] judgment for that of the

administrative law judge's."  *See Smith*, 821 F.3d at 1266.  Here, "more than a mere

scintilla" of evidence supports the ALJ's findings regarding the consistency of Plaintiff's

statements with the record, and therefore, the ALJ's findings are supported by substantial

evidence.  *See Flaherty*, 515 F.3d at 1070; *Nguyen*, 43 F.3d at 1402.

### C. Discrepancies Between the ALJ's RFC Findings and the Job Descriptions in the *DOT* at Step Five

The vocational expert testified that an individual with Plaintiff's age, education, past

relevant work experience, transferrable skills and residual functional capacity could

perform the work of a data entry clerk (DOT 203.582-054), administrative clerk[10] (DOT

219.362-010), and general clerk (DOT 209.562-010).  R. at 1167.  The ALJ found that

"the vocational expert's testimony is consistent with the information contained in the

---

[10] As Plaintiff points out, the ALJ and the vocational expert referred to this job (apparently mistakenly) as "administrative assistant" during the hearing and in the ALJ's decision; however, the *DOT* refers to this job as "administrative clerk."  *Compare* R. at 1195 (vocational expert's testimony referring to "administrative assistant" at DOT 219.362-010), *and* R. at 1167 (ALJ's decision referring to "administrative assistant" at DOT 219.362-010), *with* DOT No. 219.362-010 ("Administrative Clerk"); *see* ECF No. 14 at 50.

Dictionary of Occupational Titles."[11]  R. at 1167.  As noted, between steps three and four of the sequential evaluation process, the ALJ found that Plaintiff has the residual functional capacity to "tolerate occasional, superficial interaction with the general public" and that she "is also able to tolerate occasional interaction with coworkers and supervisors."  R. at 1156.

Plaintiff argues that the *DOT* indicates that the occupations of administrative clerk and general clerk require greater interaction with the public than Plaintiff's residual functional capacity can support.  ECF No. 14 at 50–51; ECF No. 18 at 12–13.  Plaintiff points out that the administrative clerk occupation requires "[g]iv[ing] information to and interview[ing] customers, claimants, employees, and sales personnel."  *See* ECF No. 14 at 50 (quoting DOT 219.362-010, 1991 WL 671953 (Jan. 1, 2016)); *see also* ECF No. 18 at 13.  Plaintiff also argues that the general clerk occupation requires "[r]eceiv[ing] money from customers and deposit[ing] money in bank."  DOT 209.562-010, 1991 WL 671792 (Jan. 1, 2016); *see* ECF No. 14 at 50 (citing DOT 209.562-010, 1991 WL 671792); ECF No. 18 at 13.  According to Plaintiff, the ALJ's failure to reconcile these discrepancies between her RFC findings and the *DOT* job descriptions is harmful error because Defendant did not bear the step-five burden of showing that the remaining occupation,

---

[11] The ALJ made these findings as "alternative findings for step five of the sequential evaluation process." R. at 1166.  The ALJ also found, at step four, that Plaintiff "was capable of performing past relevant work as a farm worker I, as she performed it," referring to Plaintiff's job as a bud trimmer in the Colorado marijuana industry.  R. at 53–54, 186, 1166, 1192.  As noted above, Plaintiff argues that this finding was legal error because "[i]llegal work" should not be considered "past relevant work" because it is not "relevant" under the Social Security Administration Programs Operations Manual (POMS).  ECF No. 14 at 35 (citing POMS DI 25005.015(E); SSR 82-61, 1982 WL 31387 (Jan. 1, 1982)); *see* ECF No. 18 at 4.  However, the Court need not reach this issue because the Court affirms the ALJ's step-five alternative finding that Plaintiff was able to perform work that exists in significant numbers in the national economy.

data entry clerk, exists in significant numbers in the national economy where the vocational expert testified that there are 47,000 such jobs across the country.  ECF No. 14 at 50–51; ECF No. 18 at 13.

However, even where the administrative clerk and general clerk jobs require some interaction with others, both *DOT* descriptions indicate that the tasks of "[s]peaking" and "[s]ignaling" associated with these jobs are "[n]ot [s]ignificant."  *See* DOT 219.362-010, 1991 WL 671953; DOT 209.562-010, 1991 WL 671792.  Plaintiff is correct that the ALJ must ask for an explanation from the vocational expert for any discrepancy between the vocational expert's testimony and the *DOT*.  *See Haddock v. Apfel*, 196 F.3d 1084, 1087, 1089, 1091 (10th Cir. 1999) ("[B]efore an ALJ may rely on expert vocational evidence as substantial evidence to support a determination of nondisability, the ALJ must ask the expert how his or her testimony as to the exertional requirement of identified jobs corresponds with the Dictionary of Occupational Titles, and elicit a reasonable explanation for any discrepancy on this point.").  However, Defendant points out that the ALJ is only required to elicit such an explanation where the conflict between the vocational expert's testimony and the *DOT* is *apparent*.  *See* ECF No. 17 at 27; SSR 00-4P, 2000 WL 1898704, at *2 (Dec. 4, 2000) ("When there is an *apparent unresolved conflict* between [vocational expert] or [vocational specialist] evidence and the DOT, the adjudicator must elicit a reasonable explanation for the conflict before relying on the VE or VS evidence to support a determination or decision about whether the claimant is disabled.") (emphasis added); *see also Wilson v. Astrue*, No. 10-cv-00675-REB, 2011 WL 97234, at *4 (D. Colo. Jan. 12, 2011) ("Such an inquiry is required only when there is an

*apparent* conflict between the expert's testimony and the *DOT*'s description of the requirements of the job.") (emphasis added).

The Court agrees with Defendant and finds that "this is not an instance in which the alleged conflict was so 'obvious . . . that the ALJ should have picked up on [it] without any assistance."[12]  *Laughton v. Astrue*, No. 08-cv-01848-REB, 2009 WL 2372352, at *3 (D. Colo. July 30, 2009) (Blackburn, J.) (quoting *Overman v. Astrue*, 546 F.3d 456, 463 (7th Cir. 2008)).  Therefore, any error in failing to inquire specifically about any discrepancy between the vocational expert's testimony and the *DOT* was harmless.  The ALJ was entitled to rely on the vocational expert's testimony, which constitutes substantial evidence in support of the decision.  *See Perotin v. Colvin*, 110 F. Supp. 3d 1048, 1057 (D. Colo. 2015).

## IV.    CONCLUSION

For the reasons set forth above, the Court AFFIRMS the final decision of the Commissioner.

DATED:  March 28, 2022

BY THE COURT:

_____
REGINA M. RODRIGUEZ
United States District Judge

---

[12] The Court further observes that, as to the general clerk job, a common-sense reading of the tasks of "[r]eceiv[ing] money from customers and deposit[ing] money in bank," indicated in the *DOT*, may not necessarily involve interaction with the public, as the Court can imagine that these tasks could be automated or completed through the mail.  *See* DOT 209.562-010.